IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| JOHN HARTWELL COCKE, as Executor of the Estate of William Byron Cocke, Deceased, as Executor of the Estate of Catherine Crichton Cocke, Deceased; WILLIAM MARSTON BECKER, as Conservator of W.R.C., E.C.C., J.S.C, C.E.C., P.S.G.C.,a Minor; VIRGINIA FRANCIS COCKE, as Guardians of W.R.C., E.C.C., J.S.C., C.E.C., P.S.G.C., a Minor; and JOHN HARTWELL COCKE, as Guardians of W.R.C., E.C.C., J.S.C., C.E.C., P.S.G.C., a Minor;<br><br>     Plaintiffs,<br><br>  vs.<br><br>WHISLER AVIATION, INC., a Nebraska Corporation; and CENTRAL CYLINDER SERVICE, INC., a Nebraska Corporation;<br><br>     Defendants. | 8:19-CV-335<br><br><br>**MEMORANDUM AND ORDER** |

This case comes before the Court on defendant Whisler Aviation, Inc.'s ("Whisler's") Motion to Dismiss (Filing 17) pursuant to Fed. R. Civ. P. 12(b)(6). Whisler requests dismissal of the claims against it found in counts one through four of the Complaint (Filing 1 at 14-21). As discussed below, the Court denies in part and grants in part Whisler's motion (Filing 17) upon finding that Plaintiffs have adequately stated wrongful death and survival claims based on negligence but have failed to state a claim premised on breach of warranty.

## I. BACKGROUND

Although Whisler may dispute some of the facts recited herein, when deciding a motion to dismiss, the Court "must accept a plaintiff's factual allegations as true" and make all reasonable inferences in favor of the nonmoving party. *Retro Television Network, Inc. v. Luken Commc'ns, LLC*, 696 F.3d 766, 768–69 (8th Cir. 2012).

1

This case arises out of a plane crash that occurred on August 28, 2017, resulting in the death of William Byron Cocke ("William") and Catherine Crichton Cocke ("Catherine"). Filing 1 at 2, ¶ 1. Defendant Whisler is a Nebraska corporation that does business in Nebraska. Filing 1 at 6, ¶ 12. At some point, Whisler:

> repaired, overhauled, assembled, inspected, tested, serviced, maintained, re-assembled, modified and certified as safe for service under the Federal Aviation Administration Regulations the engine installed on the subject aircraft, namely, a Continental Motors model IO-550(B) model engine, Serial Number 675936, (that failed in-flight, within the State of Georgia), including its associated component parts and systems, including, but not limited to, the subject engine's crankshaft, cylinders, cylinder assemblies, pistons, rings, bearings, bolts, connecting rods and related components and systems, that were replaced, modified, inspected, adjusted, or reassembled.

Filing 1 at 6, ¶ 10.

Whisler allegedly performed the overhaul, repair, and other assorted tasks in a negligent manner by providing defective engine components, improperly performing an inspection and installation of said components, and improperly reassembling said engine. Filing 1 at 14-15, ¶ 41. Whisler also certified the engine and its components as safe, airworthy, and free from defect in addition to certifying or warranting the work it performed reassembling the engine was properly done. Filing 1 at 6, 18, ¶¶ 10, 48. Further, Plaintiffs claim Whisler "expressly and/or impliedly warranted that the engine . . . [was] airworthy, of merchantable quality, fit and safe for the [requisite] purposes"; "warranted that the engine . . . [was] free from all defects, and assembled and re-assembled properly"; and "warranted expressly and/or impliedly that the workmanship, replacement parts, overhauled parts, and any subsequently required updated warnings, manuals, or instructions were proper, adequate and correct." Filing 1 at 18, ¶¶ 48.

Plaintiffs' theory is that as a result of Whisler's work on the engine, a connecting rod or related components which Whisler improperly used, installed, or re-assembled caused the engine

2

to "essentially c[o]me apart as a connecting rod broke through the crankcase and rendered the engine useless" on August 28, 2017. Filing 1 at 9, ¶ 23-24. This "in-flight catastrophic engine failure" crippled the aircraft and ultimately led it to crash, killing William and Catherine. Filing 1 at 7, ¶ 18. William and Catherine experienced physical injuries and died the same day as a result of the engine failure and crash. Filing 1 at 7, 24 ¶ 18, 60. The executor of their estates and the conservator and guardians for their children filed this wrongful death and survival action on July 31, 2019, as a result. *See generally* Filing 1. Plaintiffs alleged a wrongful death claim based on a negligence, a survival claim based on negligence, a wrongful death claim based on breach of warranty, and a survival claim based on breach of warranty. Filing 1. Whisler moved to dismiss the case, arguing Plaintiffs failed to state a claim upon which relief can be granted. Filing 17.

## II. DISCUSSION

### A. Standard of Review

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To satisfy this requirement, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Corrado v. Life Inv'rs Ins. Co. of Am.*, 804 F.3d 915, 917 (8th Cir. 2015) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)).

In analyzing a motion to dismiss, the Court must "accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the nonmoving party, but [is] not bound to accept as true '[t]hreadbare recitals of the elements of a cause of action, supported by

mere conclusory statements' or legal conclusions couched as factual allegations." *McDonough v. Anoka Cty.*, 799 F.3d 931, 945 (8th Cir. 2015) (citations omitted) (quoting *Ashcroft*, 556 U.S. at 678). "When considering a Rule 12(b)(6) motion, the court generally must ignore materials outside the pleadings, but it may consider some materials that are part of the public record or do not contradict the complaint, as well as materials that are necessarily embraced by the pleadings." *Ashford v. Douglas Cty.*, 880 F.3d 990, 992 (8th Cir. 2018) (quoting *Smithrud v. City of St. Paul*, 746 F.3d 391, 395 (8th Cir. 2014)).

**B. Analysis**

Whisler argues that all four counts Plaintiffs allege against it (the wrongful death and survival claims based on negligence and the wrongful death and survival claims based on breach of warranty) are conclusory without sufficient supporting factual allegations and should be dismissed. *See* Filing 19 at 3-4. In its brief in support of its motion to dismiss, Whisler first briefly addresses whether Nebraska or Georgia law applies. *See* Filing 19 at 2; Filing 30 at 9-10. Second, Whisler parses Plaintiffs' Complaint into distinct paragraphs and argues each separate paragraph fails to state a claim. *See* Filing 19 at 3-9.[1] Third, Whisler argues Plaintiffs' allegations of wrongful death and survival based on negligence are conclusory, lack sufficient factual support, and do not adequately plead causation. *See* Filing 19 at 4-6, 11. Fourth, Whisler similarly argues Plaintiffs' allegations of wrongful death and survival based on breach of warranty are conclusory and lack sufficient factual support. *See* Filing 19 at 7-8. Finally, Whisler supports its Motion to Dismiss (Filing 17) with an affidavit (Filing 20-1). The Court will address each issue and ultimately concludes, as discussed below, Plaintiffs have adequately pled their wrongful death and survival

---

[1] Contrary to this parsing, "the complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009). Accordingly, the Court will consider the factual allegations in the Complaint as a whole, as discussed further below.

claims based on negligence but have failed to state a claim against Whisler based on any breach-of-warranty claims.

   1. *Choice of Law*

Both parties devote a portion of their respective briefs to whether Nebraska or Georgia law should apply. *See* Filing 19 at 2, Filing 29 at 10-14, Filing 30 at 9-10. However, Whisler notes that an in-depth discussion of the choice of law is premature. Filing 30 at 9. Plaintiffs bring the choice-of-law issue to the court's attention but also concede the issue need not be determined at this stage because either law would lead to a similar outcome for purposes of the present motion. *See* Filing 29 at 10-14. In particular, Plaintiffs cite nearly identical negligence pleading standards utilized in both states, expound almost entirely on Nebraska law, do not address warranty law in Georgia, and plead wrongful death and survival only under Nebraska statutes. *See* Filing 1 at 15, 17, 19-20, 22, 24, 26, 28; Filing 29 at 11, 13-14. The Court will apply Nebraska law given the similarity between basic Georgia and Nebraska negligence and warranty law and the fact both parties agree the choice-of-law issue need not be decided at this time. *See BBSerCo, Inc. v. Metrix Co.*, 324 F.3d 955, 960 n.3 (8th Cir. 2003) (citing *Wood v. Mid-Valley Inc.*, 942 F.2d 425, 426 (7th Cir. 1991)) ("The operative rule is that when neither party raises a conflict of law issue in a diversity case, the federal court simply applies the law of the state in which the federal court sits."); *Shah v. Inter-Cont'l Hotel Chicago Operating Corp.*, 314 F.3d 278 (7th Cir. 2002) (explaining it is not necessary for plaintiffs to plead the applicable state law in order to survive a Rule 12(b)(6) motion to dismiss); *Fisher v. Great Socialist People's Libyan Arab Jamahiriya*, 541 F. Supp. 2d 46, 52 (D.D.C. 2008) (explaining that the federal pleading standard does not require a complaint to set forth choice of law contentions or to specify a particular state out of which each claim arises). Thus, the Court will generally apply Nebraska law at this early juncture.

5

*2. Affidavit*

Whisler offers an affidavit (Filing 20-1) which it relies on in support of several of its arguments. *See* Filing 19 at 10-11. However, the Court, in its discretion, declines to consider the affidavit or convert the pending motion into one for summary judgment.

"A court generally may not consider materials outside the pleadings when deciding a motion to dismiss for failure to state a claim or for judgment on the pleadings." *Greenman v. Jessen*, 787 F.3d 882, 887 (8th Cir. 2015). However, a court may consider "some materials that are part of the public record or do not contradict the complaint, as well as materials that are necessarily embraced by the pleadings." *Id.* (quoting *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999)). "Rule 12(b)(6) motions are not automatically converted into motions for summary judgment simply because one party submits additional matters in support of or [in] opposition to the motion." *Gorog v. Best Buy Co.*, 760 F.3d 787, 791 (8th Cir. 2014) (quoting *Casazza v. Kiser*, 313 F.3d 414, 417 (8th Cir. 2002)). Ultimately, "a court has wide discretion in electing [or declining] to consider matters outside the pleadings." *Skyberg v. United Food & Commercial Workers Int'l Union, AFL-CIO*, 5 F.3d 297, 302 n.2 (8th Cir. 1993); *see also* Conversion of a Rule 12(b)(6) Motion Into a Summary Judgment Motion, 5C Fed. Prac. & Proc. Civ. § 1366 (3d ed.) ("As the language of the rule suggests, federal courts have complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it.")

Whisler's affidavit (Filing 20-1) is clearly outside the pleadings. "Most courts . . . view 'matters outside the pleading' as including any written or oral evidence in support of or in opposition to the pleading that provides some substantiation for and does not merely reiterate what

6

is said in the pleadings." *Gorog*, 760 F.3d at 791 (quoting *BJC Health Sys. v. Columbia Cas. Co.*, 348 F.3d 685, 687 (8th Cir. 2003)). Whisler's affidavit fits within this definition. Accordingly, the Court, at this time, declines to consider the affidavit, declines to convert the pending motion into one for summary judgment, and rules on the Motion to Dismiss (Filing 17) based only on the pleadings.

    *3. Wrongful Death and Survival Claims Based on Negligence*

In its motion to dismiss, Whisler essentially argues that Plaintiffs fail to state a claim because the Complaint contains only legal conclusions which lack the requisite specificity and sufficient pleading of causation. *See* Filing 19 at 4-6, 9.

Paragraphs 10, 24, 41, and 42 of the Complaint state that Whisler overhauled and repaired the engine in question that failed, resulting in the death of William and Catherine. Plaintiffs allege that Whisler replaced the connecting rod and related engine components, and performed the overhaul and repair in a negligent manner by providing defective engine components, improperly performing an inspection and installation of said components, and improperly reassembling said engine. Filing 1 at 14-15, ¶ 41. As a result of these actions, the engine "essentially came apart as a connecting rod broke through the crankcase and rendered the engine useless." Filing 1 at 9, ¶ 23-24. This "in-flight catastrophic engine failure" crippled the aircraft and ultimately led it to the crash which caused the deaths of William and Catherine. Filing 1 at 14-15, ¶ 41-42.

Whisler argues Plaintiffs' pleadings are too broad because they point to nearly a dozen different engine components ("engine's crankshaft, cylinders, cylinder assemblies, pistons, rings, bearings, bolts, connecting rods and related components and systems") and almost a dozen different tasks performed related to the engine ("repaired, overhauled, assembled, inspected, tested, serviced, maintained, re-assembled, modified and certified as safe for service"). *See* Filing

7

19 at 4. However, all the alleged tasks and components directly involve Whisler's mechanical work on the aircraft's engine. Further and as noted above, Plaintiffs have pled that the connecting rod broke through the crankcase; Plaintiffs have also pled that Whisler performed substandard work or incorrectly replaced the connecting rod. Though Plaintiffs' Complaint fails to concisely distill the allegations as the Court has done above, the additional facts pled in the Complaint do not so muddy the waters so as to wipe away the pertinent allegations contained therein.

Whisler does not dispute that Plaintiffs have sufficiently pled duty, breach, and damages. Filing 19 at 5-6. However, Whisler contends that Plaintiffs have not adequately pled causation. *See* Filing 19 at 5-6 (citing *Lewison v. Renner*, 298 Neb. 654, 905 N.W.2d 540, 548 (2018) for the elements of a negligence claim).[2] The Court again finds that Plaintiffs have pled enough facts to state a facially plausible claim that Whisler performed substandard work or incorrectly replaced the connecting rod thus causing the engine to fail, specifically noting that the connecting rod broke through the crank case thereby disabling the engine. Filing 1 at 9, ¶ 24.

In support of its argument, Whisler relies on *Brown v. Providence Med. Servs.*, No. 8:10CV230, 2010 WL 4534407, at *3 (D. Neb. Nov. 1, 2010) in which the plaintiff's daughter suffered specific medical complications related to a procedure and died. The plaintiff alleged the defendant medical center "failed to provide emergency medical care within the scope and guidelines of 42 U.S.C. § 1395dd, et seq." *Id.* The Court noted that there were insufficient facts to infer a failure to provide sufficient care in compliance with the cited statute because the allegation was conclusory and speculative due to a lack of any factual allegations as to what the defendant medical center failed to do or wrongfully did. *Id.* at 4-5. Unlike the allegations in *Brown*, the

---

[2] Whisler also cites Nebraska case law related to proximate cause, particularly efficient intervening causes, but the Complaint does not contain sufficient facts for the Court to decide that issue at this time. A Rule 56 motion would be more appropriate for such an argument once additional facts are before the Court.

allegations before this Court provide sufficient facts for the Court to infer causation, particularly when Plaintiffs allege Whisler's deficient work on the connecting rod and related components eventually caused the engine to fail.

Whisler also relies on *Vallejo v. Amgen, Inc.*, No. 8:14CV50, 2014 WL 4922901, at *9 (D. Neb. Sept. 29, 2014) in which the plaintiff alleged negligence based on the defendants' failure "to exercise ordinary care in the design, formulation, manufacture, sale, testing, quality assurance, quality control, labeling, marketing, promotions and distribution." The *Vallejo* court found such allegations to be mere legal conclusions. *Id.* Unlike *Vallejo*'s broad, production-chain-encompassing allegations, Plaintiffs here allege facts involving Whisler's specific actions in overhauling and repairing the engine, including providing defective engine components, improperly installing and inspecting said components, and improperly reassembling the engine. Filing 1 at 14-15, ¶ 41. As a result of these actions, the engine "essentially came apart as a connecting rod broke through the crankcase and rendered the engine useless" on August 28, 2017. Filing 1 at 9, ¶ 23-24.

Accordingly, while Plaintiffs could have pled more directly and concisely, the Court finds the Complaint construed as a whole sufficiently states a negligence claim based on wrongful death and a survival claim based on negligence

    *4. Wrongful Death and Survival Claims Based on Breach of Warranty*

With respect to Plaintiffs' claims for wrongful death and survival based on breach of warranty, Whisler argues the Complaint contains only conclusory allegations and lacks allegations of causation. *See* Filing 19 at 7-8. The Court notes Plaintiffs fail to specify whether their wrongful death and survival claims are based on breach of express warranty for goods, breach of implied

9

warranty of merchantability, breach of implied warranty of fitness, breach of express warranty for services, or breach of implied warranty for services or workmanship. *See* Filing 1 at 18, ¶ 48.

Such distinctions are important because case law makes clear that transactions predominantly involving goods are governed by the Nebraska Uniform Commercial Code ("UCC"), Neb. Rev. Stat. UCC § 2-101 *et seq.*, while transactions predominantly involving services are outside the UCC and governed by common law. *Herman v. Bonanza Buildings, Inc.*, 223 Neb. 474, 482–83, 390 N.W.2d 536, 542–43 (1986); *see also Meyer Nat. Foods LLC v. Greater Omaha Packing Co.*, 302 Neb. 509, 518, 925 N.W.2d 39, 46 (2019). Whether a transaction is for goods or services depends on the transaction's "predominant purpose." *Id.* The allegations before the Court are not clear as to what the predominant purpose of Whisler's involvement with the engine was because the Complaint alleges both services (Whisler "repaired, overhauled, assembled, inspected, tested, serviced, maintained, re-assembled, modified and certified" the engine) and goods (listing all of the components involved and alleging some components were defective).[3] Filing 1 at 6, 14-15, 18 ¶¶ 10, 41, 48-49.

While the Complaint is not clear as to which warranty theory Plaintiffs are proceeding under or what the predominant purpose of Whisler's involvement with the engine was, "[t]he essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party 'fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved.'" *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (quoting *Hopkins v. Saunders*, 199 F.3d 968, 973 (8th Cir. 1999). "The failure in a

---

[3] The Court notes that the limited facts before it favor a finding that the predominant purpose of Whisler's involvement with the engine appears to be services because all components involved were associated with the maintenance and reassembly services provided by Whisler. *See Herman*, 223 Neb. at 482, 390 N.W.2d at 542 (holding the predominant purpose of a construction transaction was erection of a building and not the transfer of goods used to build the structure). However, the Court reserves full analysis for a later time when the record is further developed.

complaint to cite a statute, or to cite the correct one, in no way affects the merits of the claim." *Id.* (quoting *Quinn–Hunt v. Bennett Enters., Inc.*, 122 Fed. Appx. 205, 207 (6th Cir. 2005)). "Factual allegations alone are what matters," and "the court is under a duty to examine the complaint to determine if the allegations provide for relief on any possible theory." *Id.* at 849. Accordingly, the Court examines Plaintiffs' allegations to ascertain whether they have stated a claim based on any of the potential breach-of-warranty theories enumerated above. The Court finds Plaintiffs failed to state a claim for breach of any warranty under any of the possible available theories: express warranty for goods, implied warranty of merchantability for goods, implied warranty of fitness for a particular purpose for goods, express warranty for services, or implied warranty for services or workmanlike performance. Each will be discussed further below.

The facts relevant to Whisler's express or implied warranties include Whisler "certify[ing] as safe for service under the Federal Aviation Administration Regulations the engine installed on the subject aircraft"; "*expressly and/or impliedly* warrant[ing] that the engine. . . [was] airworthy, of merchantable quality, fit and safe for the [requisite] purposes"; "warrant[ing] that the engine. . . [was] free from all defects, and assembled and re-assembled properly;" and "warrant[ing] *expressly and/or impliedly* that the workmanship, replacement parts, overhauled parts, and any subsequently required updated warnings, manuals, or instructions were proper, adequate and correct." Filing 1 at 6, 18, ¶¶ 10, 48 (emphasis supplied). Further, Whisler "knew that these warranties would be, and actually were, relied upon." Filing 1 at 18, ¶ 48.

    a. Breach of Warranty for Goods

With respect to breach of warranty as it relates to goods rather than services, the two possible theories upon which the Complaint could be based are express warranty and implied

11

warranty. The Court concludes that Plaintiffs have failed to state a claim for wrongful death or survival based on either theory.

      i. Express Warranty for Goods

Neb. Rev. Stat. UCC § 2–313 requires that, "in order to create an express warranty, the seller must make an affirmation of fact or promise to the buyer which relates to the goods and becomes part of the basis of the bargain." "Express warranties rest on 'dickered' aspects of the individual bargain . . . ." *See id.* cmt. 1; *see also Freeman v. Hoffman-La Roche, Inc.*, 260 Neb. 552, 574, 618 N.W.2d 827, 844 (2000) (same).

In *Freeman*, the Nebraska Supreme Court dismissed a plaintiff's claim for breach of express warranty because the plaintiff alleged only that the defendant "expressly warranted to her that [the good] was of marketable condition and that [the plaintiff] relied on this warranty." *Id.* The plaintiff "did not allege any factual basis for this assertion." *Id.* The court noted that the plaintiff "did not allege that any such warranty was the basis of a bargain between herself and [the defendant]." *Id.* Accordingly, the court found that the plaintiff "did not allege a theory of recovery for breach of express warranty." *Id.*

In *Vallejo*, 2014 WL 4922901, at *8, the plaintiff "only alleged that [the defendants] expressly warranted that [the good] was of merchantable quality, fit, safe, and otherwise not injurious to the health of [the decedent] . . . ." The plaintiff failed to allege "any factual basis for this assertion" and also failed to allege "that any such warranty was the basis of the bargain between [the decedent] and [the defendants]." Identically to the *Freeman* court, the *Vallejo* court dismissed the claim for breach of express warranty. *Id.*

Just as in *Freeman* and *Vallejo*, Plaintiffs fail to allege that any of the claimed warranties were dickered or were the basis of any bargain. Further, the allegations in the Complaint are similar

to those in *Vallejo* in that they do not assert a factual basis to form an express warranty. To the extent Plaintiffs' third and fourth claims are predicated upon a breach of express warranty for goods, the claims are dismissed.

      ii.  Implied Warranty for Goods

"The Uniform Commercial Code adopts only two implied warranties in a sale-of-goods contract: the implied warranty of merchantability and the implied warranty of fitness for a particular purpose." *Lesiak v. Cent. Valley Ag Co-op., Inc.*, 283 Neb. 103, 117, 808 N.W.2d 67, 79 (2012).

Examining first any implied warranty of merchantability, the Court finds Plaintiffs have not plausibly stated a claim. "[A] warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." Neb. Rev. Stat. § UCC 2-314. Defining merchant, the UCC provides, "'Merchant' means a person who deals in goods of the kind or otherwise by his or her occupation holds himself or herself out as having knowledge or skill peculiar to the practices or goods involved in the transaction." Neb. Rev. Stat. UCC § 2-104(1). Further defining merchant, UCC § 2-104 comment 2 notes that "almost every person in business" meets such a broad definition, but the implied warranty of merchantability applies only "if the seller is merchant *with respect to goods of that kind*." Neb. Rev. Stat. UCC § 2-104 cmt. 2 (emphasis supplied). "Obviously this qualification restricts the implied warranty to a much smaller group than everyone who is engaged in business and requires a professional status as to particular kinds of goods." *Id.*

Plaintiffs have alleged enough to meet the broad definition of "merchant" by alleging Whisler deals with engine components. *See* Filing 1 at 6, 14, 18 ¶¶ 10, 41, 48. Plaintiffs' allegations, however, fail to meet the narrower requirement that the seller be a merchant *with*

*respect to goods of that kind*. Neb. Rev. Stat. UCC § 2-104 cmt. 2 (emphasis supplied). Plaintiffs focus solely on Whisler's involvement with the engine components in this particular case without alleging Whisler held itself out as having particular knowledge or skills peculiar to the goods involved. Accordingly, the Court need not conduct further analysis because it finds that Plaintiffs insufficiently alleged that Whisler is a merchant with respect to the engine components in question. Plaintiffs therefore fail to state a claim for a breach of implied warranty of merchantability.

Examining next any implied warranty of fitness for a particular purpose, the Court finds Plaintiffs have failed to state a claim. Breach of an implied warranty of fitness for a particular purpose requires proof that (1) the seller had reason to know of the buyer's particular purpose, (2) the seller had reason to know that the buyer was relying on the seller's skill or judgment to furnish appropriate goods, and (3) the buyer, in fact, relied upon the seller's skill or judgment. *Sherman v. Sunsong Am., Inc.*, 485 F. Supp. 2d 1070, 1086 (D. Neb. 2007) (citing *Outlook Windows P'ship v. York Int'l Corp.*, 112 F. Supp. 2d 877, 899 (D. Neb. 2000) and *El Fredo Pizza, Inc. v. Roto-Flex Oven Co.*, 199 Neb. 697, 261 N.W.2d 358, 362–63 (1978)).

A "particular purpose" differs from the ordinary purpose for which the goods are used and "envisages a specific use by the buyer which is peculiar to the nature of his or her business." *Stones v. Sears, Roebuck & Co.*, 251 Neb. 560, 569, 558 N.W.2d 540, 547 (1997) (quoting Neb. Rev. Stat. UCC § 2–315 cmt. 2). In contrast, an "ordinary purpose" is one "envisaged in the concept of merchantability and go to uses which are customarily made of the goods in question." *Id.* Liability for breach of the implied warranty of fitness for a particular purpose "lies only when goods do not fulfill the specific need for which they were purchased, and not when the goods are defective per se or fail to meet their ordinary purpose." *Id.*

The Complaint contains no allegations of any particular purpose for the aircraft engine or components but rather indicates they were used normally and were defective. *See* Filing 1 at 14, ¶ 41 (Whisler "provided defective component parts for the engine"). There are no allegations that "[the components were] purchased for a 'specific use' that is different from how [engine components] are customarily used." *Tamayo v. CGS Tires US, Inc.*, No. 8:11CV61, 2012 WL 2129353, at *9 (D. Neb. June 12, 2012) (granting summary judgment based on a lack of evidence showing a tire was purchased for a noncustomary use); *see also Stones*, 251 Neb. at 569, 558 N.W.2d at 547 (granting summary judgment when goods were purchased and used for ordinary purposes); *Sherman*, 485 F. Supp. 2d at 1085 (same). As such, there can be no breach of warranty of fitness for a particular purpose when Plaintiffs have not alleged a particular purpose.

      b. Breach of Warranty for Services

The Court next considers the theories of express and implied warranty as they relate to services. *See Topchian*, 760 F.3d at 849. Applying common law, the Court concludes that Plaintiffs have failed to state a claim for wrongful death or survival based on breach of an express warranty for services and have failed to state a claim for breach of an implied warranty for services.

      i. Express Warranty for Services

As discussed above, transactions predominantly involving services are outside the UCC and are governed by common law. *Herman*, 223 Neb. at 482, 390 N.W.2d at 542. "[A]n express common-law warranty arises when, to induce a sale, the seller makes a statement of fact representing the quality or character of the thing sold, which statement is reasonably relied upon by the buyer." *Id.* at 483, 543. Here, the Complaint is devoid of allegations showing that any alleged warranties induced a sale much less that a contract or agreement for services existed. *See Vallejo*, 2014 WL 4922901, at *8 (dismissing claim for breach of warranty for goods after the

15

plaintiff failed to allege, inter alia, that any warranty "was the basis of the bargain between [plaintiff] and [defendant]"). Further, there are no specific factual allegations to support a finding of an express warranty for services. Accordingly, counts three and four of the Complaint, to the extent they attempt to state a claim for breach of express warranty for services, will be dismissed.

### ii. Implied Warranty for Services

Common law controls service contracts. *Lesiak*, 283 Neb. at 117, 808 N.W.2d at 79. "The only circumstance under which [the Nebraska Supreme Court has] found an implied services warranty in a contract for services is in the context of building and construction contracts." *Id.* (citing *Moglia v. McNeil Co.*, 270 Neb. 241, 700 N.W.2d 608 (2005)); *see also Thurston v. Nelson*, 21 Neb. App. 740, 755, 842 N.W.2d 631, 644 (2014) (discussing implied warranty of workmanlike performance inherent in construction work); *Henggeler v. Jindra*, 191 Neb. 317, 319, 214 N.W.2d 925, 926 (1974) (same). The rationale behind this limitation is that "it may be impossible for the ordinary consumer to determine the building's structural quality, because many of the most important elements of its construction are hidden from view and are not discoverable even by careful inspection." *Lesiak*, 283 Neb. at 117-18, 808 N.W.2d at 79-80.

Notably, the *Lesiak* court concluded its analysis of implied warranties for services by stating, "builders or sellers of new construction and manufacturers or merchandisers of goods make implied representations that each used reasonable skill and judgment in its work." *Id.* at 18, 80. While Whisler's work on the engine may have been similar to construction work in that most important elements are likely hidden and not discoverable, the Court declines to extend this reasoning beyond the construction context clearly set forth by the Nebraska Supreme Court. Accordingly, Plaintiffs fail to state a claim for breach of implied warranty for services or of

workmanlike performance because Nebraska law does not provide for such a warranty outside the area of construction contracts.

### III.  CONCLUSION

While the Court understands Whisler's concerns with the broad and vague factual allegations made in Plaintiffs' Complaint, they are adequate to survive the motion to dismiss in part, as set forth above. Upon a properly made motion for summary judgment, it is possible many or all of the remaining claims will fail, especially if Whisler is able to support its contention that its actions are too remote in time to support liability for the plane crash. However, at this early stage, the Court finds the allegations contained within Plaintiffs' Complaint ([Filing 1](Filing 1)) state a claim for wrongful death and survival claims based on negligence but fail to state a claim against Whisler for wrongful death and survival based on breach of warranty.

IT IS THEREFORE ORDERED:

1. Defendant Whisler Aviation, Inc.'s Motion to Dismiss ([Filing 17](Filing 17)) is denied as it relates to Plaintiffs' wrongful death and survival claims based on negligence at Counts I and II;
2. Defendant Whisler's Motion is granted as to Plaintiffs' wrongful death and survival claims based on any breach of warranty at Counts III and IV and such counts are dismissed without prejudice.

Dated this 27th day of December, 2019.

                                              BY THE COURT:

                                              Brian C. Buescher
                                              United States District Judge